THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE,<br><br>Plaintiff,<br><br>v.<br><br>RED ROCK 4 WHEELERS,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTIONS AND DENYING PLAINTIFF'S MOTION**<br><br>Case No. 4:21-cv-00062-DN-PK<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This action was filed by Plaintiff The Cincinnati Specialty Underwriters Insurance, seeking a declaratory judgment that it had no duty to defend Defendant Red Rock 4-Wheelers in a state court lawsuit. Defendant Red Rock 4 Wheelers filed a Motion to Dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) ("Defendant's Motion")[1]. Plaintiff filed an Opposition[2], and Defendant filed a Reply[3]. Plaintiff subsequently filed a Motion for Summary Declaratory Judgment[4] pursuant to Fed. R. Civ. P. 56. Defendant filed an Opposition[5], and Plaintiff filed a Reply[6].

For the reasons stated below, Defendant's Motion is GRANTED. For the same reasons, Plaintiff's Motion for Summary Declaratory Judgment is DENIED. Defendant also filed a

---

[1] Docket no. 13, filed August 9, 2021.

[2] Plaintiff's Opposition to Defendant's Motion to Dismiss, docket no. 22, filed September 6, 2021.

[3] Reply Memorandum in Support of Defendant's Motion to Dismiss, docket no. 28, filed October 11, 2021.

[4] Docket no. 21, filed September 6, 2021.

[5] Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, docket no. 29, filed October 11, 2021.

[6] Reply in Support of Plaintiff's Motion for Summary Judgment, docket no. 37, filed November 8, 2021.

Motion for Leave to File Amended Answer and Counterclaims,[7] to which Plaintiff filed an

Opposition[8]. The Motion for Leave to File Amended Answer and Counterclaims will be

GRANTED.

**Contents**

Background .................................................................................................................. 2
Undisputed Material Facts ........................................................................................... 4
Discussion .................................................................................................................... 8
    Defendant's Motion to Dismiss Will be Construed as a  Motion for Judgment on the
        Pleadings ........................................................................................................ 8
    The Duty to Defend Explained .............................................................................. 9
    CSU has a Duty to Defend Against the Claims in the Complaint. ....................... 10
    CSU Cannot Use Extrinsic Evidence to Satisfy its Duty to Defend. .................... 13
    A Determination of CSU's Duty to Indemnify is not Ripe. ................................. 17
    Defendant's Motion for Leave to Amend will be Denied. .................................. 18
Conclusion and Order .................................................................................................. 18

## BACKGROUND

This case arises out a tort claim brought by Laura Neumann against Red Rock 4

Wheelers, Inc. ("Red Rock") in Nevada state court.[9] Neumann alleged she was injured when she

was struck by a vehicle at an event hosted by Red Rock called the Moab Jeep Safari Golden

Spike Trail (the "Jeep Tour").[10] Neumann initiated the underlying lawsuit in on November 7,

2019, alleging that Red Rock had negligently supervised and directed the vehicle that struck

her.[11]

The Cincinnati Specialty Underwriters Insurance ("CSU"), Red Rock's insurer, initially

agreed to provide a defense to Red Rock in the underlying litigation.[12] As part of discovery, CSU

---

[7] Docket no. 35, filed November 3, 2021.

[8] Plaintiff's Opposition to Motion for Leave to Amend Counter-Claim, docket no. 40, filed November 15, 2021.

[9] See Complaint, docket no. 2-1 ("State Complaint").

[10] State Complaint at ¶11.

[11] State Complaint at ¶¶14-24.

[12] Motion for Summary Declaratory Judgment, Statement of Undisputed Facts 11.

deposed Neumann and received interrogatories from her.[13] After discovery, CSU concluded that Neumann's claims fell outside those covered by the Policy and filed the complaint in this action, seeking a declaration that it had no duty to defend or that it had fulfilled its duty to defend.[14]

Red Rock filed an answer in August 2019 denying that CSU had fulfilled its duty to defend.[15] Red Rock also asserted two counterclaims for declaratory relief and violation of the duty of good faith and fair dealing.[16] As of the date of this opinion, CSU has not yet filed a responsive pleading to the counterclaims.

Simultaneously with its Answer and Counterclaims, Red Rock filed a Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6).[17] In the Motion to Dismiss, Red Rock argued that CSU had a continuing duty to defend it in the underlying lawsuit, and that duty was not extinguished.[18]

In October 2021, CSU filed a Motion for Summary Judgment, arguing it had no duty to defend Red Rock in the underlying action as a matter of law.[19] As part of its Motion, CSU offered a series of documents it had obtained through discovery in the underlying action. These documents included Neumann's deposition;[20] Neumann's response to interrogatories;[21] an

---

[13] *Id.*, Statement of Undisputed Facts 16; Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, docket no. 29, filed October 11, 2021, at 3-4.

[14] Motion for Summary Declaratory Judgment at 3.

[15] Answer and Counterclaims, Docket no. 12, filed August 9, 2021.

[16] Answer and Counterclaims at 8.

[17] Defendant's Motion.

[18] *Id.* at 14.

[19] Motion for Summary Declaratory Judgment.

[20] Videotaped Deposition of Laura Nicole Neumann, docket no. 21-8, filed September 6, 2021.

[21] Plaintiff's Amended Response to Defendant Red Rock 4-Wheelers, Inc.'s First Set of Interrogatories, docket no. 21-7, filed September 6, 2021.

owner's manual for the model of Jeep it claimed Neumann was struck by;[22] and a release that Neumann had signed prior to the Jeep Tour.[23]

On November 3, 2021, Red Rock filed a Motion for Leave to File Amended Answer and Counterclaims,[24] seeking to add an abuse of process counterclaim and alleging that CSU had instigated the present action as a "gambit" to coerce Red Rock into settling with Neumann. CSU opposed this motion.[25]

## UNDISPUTED MATERIAL FACTS

1.      On November 7, 2019, Laura Neumann filed a complaint against Red Rock, alleging she suffered injuries in April 2019 when she was struck by a vehicle at an event hosted by Red Rock called the Moab Jeep Safari Golden Spike Trail (the "Jeep Tour"). [26]

2.      Neumann alleged Red Rock had negligently failed to maintain a safe distance for "the crowd and observers such as [Neumann]".[27]

3.      Neumann also alleged Red Rock had improperly failed to instruct the vehicle driver where to proceed.[28]

---

[22] Jeep Wrangler Owner's Manual ("Jeep Manual"), docket no. 21-11, filed September 6, 2021.

[23] Release, docket no. 21-10, filed September 6, 2021.

[24] Docket no. 35, filed November 3, 2021. On October 26, 2021, Red Rock filed an Amended Answer without seeking leave to amend first. Docket no. 33, filed October 26, 2021. The court entered a Docket Text Order directing Red Rock to file a Motion for Leave to Amend to ensure the filing was not unauthorized. Docket no. 27, filed October 27, 2021.

[25] Plaintiff's Opposition to Motion for Leave to Amend Counter-Claim, docket no. 40, filed November 15, 2021.

[26] Motion for Summary Declaratory Judgment, Statement of Undisputed Facts 3-4.

[27] Id., Statement of Material Facts 5; State Complaint at ¶9.

[28] Motion for Summary Declaratory Judgment, Statement of Undisputed Facts 6.

4.     Red Rock purchased a Commercial General Liability Policy No. CSU0118280 ("Policy") from CSU, applicable in the Policy Period between August 1, 2018, and August 1, 2019.[29]

5.     The Policy contains the following Insuring Agreement:

**1.   Insuring Agreement.**

**a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

. . .

**b.**   This insurance applies to "bodily injury" and "property damage" only if:

**(1)**   The "bodily injury" or "property damage" is caused by an "occurrence that takes place in the coverage territory";

**(2)**   The "bodily injury" or "property damage" occurs during the policy period . . . .[30]

6.     The Policy contains the following definitions:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.[31]

. . .

"Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada . . . .[32]

. . .

---

[29] *Id.*, Statement of Undisputed Facts 1; Policy, docket no. 21-2, filed September 6, 2021, at 1.

[30] Policy at 17.

[31] *Id.* at 29.

[32] *Id.*

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[33]

. . .

"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.[34]

7.    The Policy contains the following exclusion regarding special events:

This insurance does not apply to "bodily injury", "property damage" or "personal or advertising injury" to any person while practicing, instructing, supervising, officiating, training or participating in any physical exercise, game, sport contest, race, exhibition, demonstration, special event, Jeep Tours and Jeep Rentals, performance or show."[35]

8.    The Policy contains the following exclusion regarding recreational off-road vehicles:[36]

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" . . .

**(1)** Arising out of the:

    a. Ownership;
    b. Maintenance
    c. Rental;
    d. Lease
    e. Entrustment to others; or
    f. Use of any "all-terrain vehicle (ATV)" "utility terrain vehicle (UTV)", snowmobile, or any other "recreational off-road vehicle (ROV)".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the "occurrence" or offense which caused the "bodily injury", "property damage" or "personal and advertising injury" involved the ownership, maintenance, rental, lease, use or entrustment of to others of any "all-terrain vehicle (ATV)", "utility

---

[33] *Id.* at 31.

[34] *Id.* at 32.

[35] *Id.* at 68.

[36] *Id.* at 58.

terrain vehicle (UTV)", snowmobile, or other "recreational off-road vehicle (ROV)".

. . .

**"Utility terrain vehicle (UTV)" and "Recreational off-road vehicle (ROV)"** means any motorized vehicle operating on a crawler tread or four or more tires designed for off-road use having a bench or bucket seating for each occupant and a steering wheel for control.

9.     The Policy contains the following Limited Coverage for Special Events endorsement:

Event Name and Description: 2019 Jeep Expo; 2019 Easter Jeep Safari and Labor Day Campout 2018; Monthly Member's Safari Jeep Outings

. . .

This insurance applies only to "bodily injury," "property damage," or "personal and advertising injury" arising out of

   1.   Operations necessary or incidental to the Event designated in the schedule; or
   2.   Included in the "products-completed operations hazard" and arising out of the Event shown in the schedule.[37]

10.     The State Complaint only identifies what struck Neumann as a "vehicle".[38]

11.     The State Complaint only identifies Neumann as either a "bystander" or an "observer".[39]

12.     CSU agreed to provide a defense to Red Rock under a complete reservation of rights.[40]

13.     On or about December 16, 2019, the State Complaint was removed from Nevada state court to the United States District Court for the District of Nevada.[41]

---

[37] *Id*. at 64.

[38] State Complaint at ¶¶11-12.

[39] State Complaint at 1, ¶¶9-10.

[40] Motion for Summary Declaratory Judgment, Statement of Undisputed Facts 11.

[41] *Id*., Statement of Undisputed Facts 15.

14.     Neumann was deposed in October 2020.[42]

## DISCUSSION

**Defendant's Motion to Dismiss Will be Construed as a
Motion for Judgment on the Pleadings**

Because Red Rock filed its answer concurrently with its Motion, and the answer was docketed prior to Defendant's Motion, CSU argues Defendant's Motion is procedurally improper under Rule 12(b).[43] While some courts treat a motion to dismiss filed at the same time as an answer as timely filed,[44] the Fourth Circuit has held that when a party files an answer and a 12(b)(6) motion simultaneously, the motion should be construed as a motion for judgment on the pleadings under Rule 12(c).[45] What Red Rock appears to be seeking is a determination on the merits that CSU has a continuing duty to defend, which is more appropriately resolved on a motion for judgment on the pleadings.[46] While the distinction is often merely academic, as the two types of motions are assessed under an identical standard, Defendant's motion to dismiss will be construed as a motion for judgment on the pleadings.[47] Therefore, taking all well-pled as facts true, Defendant's Motion will be granted if it appears beyond a doubt that CSU will be unable to prove any set of facts entitling it to recovery under its theory of recovery.[48]

---

[42] *Id.*, Statement of Undisputed Facts 20; Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 5.

[43] Plaintiff's Opposition to Defendant's Motion to Dismiss at 2.

[44] *Sumpter v. Albrecht*, No. 10-CV-00580-WYD-MJW, 2011 WL 940901, at *2 (D. Colo. Mar. 16, 2011), *report and recommendation adopted sub nom. Sumpter v. Ahlbrecht*, No. 10-CV-00580-WYD-MJW, 2012 WL 252980 (D. Colo. Jan. 26, 2012).

[45] *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).

[46] *See Emanuel v. Ace Am. Ins. Co.,* No. CIV.A. ELH-11-875, 2011 WL 5881793, at *1 n.3 (D. Md. Nov. 23, 2011).

[47] See *Swearingen v. Honeywell, Inc.*, 189 F. Supp. 2d 1189, 1193 (D. Kan. 2002).

[48] *Id.*

**The Duty to Defend Explained**

The Policy imposes two litigation-related duties on CSU: a duty to defend, and a duty to indemnify. Because Utah is the forum state, analysis of those duties is governed by Utah law.[49]

In Utah, analysis of a duty to defend claim is typically limited to two documents: the insurance policy and the complaint in the underlying action. This limitation is referred to as the "eight-corners rule."[50] In rare circumstances, when the language of an insurance policy conditions the contractual duty to defend on something other than the allegations in the complaint, a court can consider extrinsic evidence — that is, evidence outside the policy and complaint — in assessing a duty to defend.[51] But when a contract conditions the duty to defend on the *existence of a suit seeking covered damages*, the eight-corners rule strictly limits a court to only consider the complaint and the policy.[52]

The eight-corners rule applies in this case. The Policy states that CSU has "the right and duty to defend the insured against any 'suit' seeking [damages because of bodily injury] . . . caused by an 'occurrence that takes place in the coverage territory'" which occurred during the policy period.[53] The Policy defines "suit" as a civil action where "damages because of 'bodily injury' . . . to which this insurance applies are alleged."[54] This language defines the duty to defend solely by what a suit alleges. Identical policy language has been found to trigger the eight-corner rule under Utah law.[55] Because the Policy premises the duty to defend on the

---

[49] *See Headwaters Res., Inc. v. Illinois Union Ins. Co.*, 770 F.3d 885, 891 (10th Cir. 2014).

[50] *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733, 737 (Utah 2011).

[51] *Id*. at 736; *see Owners Ins. Co. v. Dockstader*, No. 2:18CV173DAK, 2019 WL 1206886, at *4 (D. Utah Mar. 14, 2019), aff'd, 861 F. App'x 210 (10th Cir. 2021).

[52] *Equine Assisted Growth & Learning Ass'n*, 266 P.3d at 736.

[53] Policy at 17.

[54] *Id*. at 32.

[55] *AMSCO Widows,* 921 F. Supp. 2d at 1238-39.

allegations contained on the face of the complaint, determining the duty to defend requires comparison of the language of the policy and the allegations in the complaint.[56] If the allegations in the complaint could potentially result in a covered claim, CSU must defend.[57]

To negate a contractual duty to defend, an insurer bears the burden to "demonstrate that none of the allegations of the underlying claim [are] potentially covered[.]"[58] If there are both covered and non-covered claims in a suit, the insurer must defend the insured against all claims in the suit.[59] The duty to defend is "broad, arising if there is potential, not actual, liability,"[60] and an insurer must tender a defense even if "factual questions [would] render coverage uncertain . . . '[w]hen in doubt, defend.'"[61]  Accordingly, Plaintiff's Motion for Summary Declaratory Judgment may only be granted if, based on the allegations in the underlying complaint, there is no possibility of coverage.

### CSU has a Duty to Defend Against the Claims in the Complaint.

A comparison between the language of the policy and the allegations of the complaint shows that CSU has a duty to defend against the allegations in the complaint. The Policy requires CSU to defend Red Rock against any suit which alleges damages (1) resulting from bodily injury, (2) caused by an accidental "occurrence", (3) during the policy period and (4) within the covered territory.[62] The allegations in the complaint meet all four of these requirements. First,

---

[56] See *Equine Assisted Growth & Learning Ass'n*, 266 P.3d at 736.

[57] *See Headwaters Res., Inc. v. Illinois Union Ins. Co.*, 770 F.3d at 891.

[58] *Id.*

[59] *Benjamin v. Amica Mut. Ins. Co.*, 140 P.3d 1210, 1216 (Utah 2006)

[60] *Owners Ins. Co. v. Hafen*, No. 4:20-CV-00050-DN-PK, 2021 WL 4133930, at *3 (D. Utah Sept. 10, 2021) (internal quotations omitted) (quoting *Cincinnati Ins. Co. v. AMSCO Windows*, 921 F. Supp. 2d 1226, 1236 (D. Utah 2013), *supplemented*, No. 2:10-CV-00542-BSJ, 2013 WL 12141330 (D. Utah Sept. 23, 2013), and *aff'd*, 593 F. App'x 802 (10th Cir. 2014))

[61] *Benjamin*, 140 P.3d at 1215 (quoting Appleman on Insurance Law and Practice § 136.2[C] (2d ed.2006)).

[62] Policy at 17.

Neumann alleged damages from "injury to her body" in the State Complaint.[63] Second, Neumann alleged the damages were a result of a negligent failure to supervise and monitor the race, meaning the damages were caused by an accidental "occurrence".[64] Third, the injury was alleged to have occurred in April 2019, within the policy period.[65] And fourth, the injury was alleged to occur within the United States of America, which was the covered territory.[66] The policy also included a special coverage for bodily injury arising out of "[o]perations necessary or incidental" to the Jeep Tour, which would appear to encompass the allegations in the complaint.[67] Therefore, the State Complaint facially imposes a duty to defend on Red Rock.

CSU argues that two exclusions in the Policy exclude Neumann's claims from coverage: a provision excluding from coverage bodily injuries that arise out of certain events concerning all-terrain vehicles, utility terrain vehicles, snowmobiles, and other recreational off-road vehicles ("Off-Road Vehicle Exclusion")[68] and a provision excluding from coverage injuries arising out of "practicing, instructing, supervising, officiating, training, or participating" in the Jeep Tour and similar events  ("Participant Exclusion").[69] CSU contends that because these provisions definitively exclude Neumann's claims from coverage, it has no to duty to defend those claims.[70]

---

[63] State Complaint at ¶17.

[64] State Complaint at ¶¶14-18. The Supreme Court of Utah has noted that negligent acts are typically considered accidents in the context of insurance coverage. *Hoffman v. Life Ins. Co. of N. Am.*, 669 P.2d 410, 416 n.2 (Utah 1983).

[65] State Complaint at ¶5.

[66] *Id*.

[67] *See* Policy at 63

[68] *Id*. at 57.

[69] *Id*. at 68.

[70] Motion for Summary Declaratory Judgment at 18.

While an insurer is permitted to limit or modify its obligation to an insured through contractual exclusions, Utah courts construe such exclusions "strictly . . . against the insurer."[71] Exclusions are given effect "only when they use 'language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided.'"[72] If an exclusion is ambiguous as to whether or not it would exclude coverage in a circumstance, courts will not interpret it to exclude coverage.[73]  Accordingly, to defeat a duty to defend, an insurer must show a policy "unambiguously except[s] from coverage the allegations" contained within the underlying complaint.[74]

Importantly, the complaint does not identify what type of vehicle Neumann was struck by. The eight-corners rule limits a court to only the allegations in the complaint, and the complaint merely states that Neumann was struck by a "vehicle".[75] CSU does not suggest that the policy excludes all vehicles from coverage, and it is at least plausible that injury arising from a vehicle collision would be covered by the policy. Therefore, the Off-Road Vehicle exclusion would not eliminate the duty to defend.

The Participant Exclusion also does not unambiguously except Neumann's allegations in the underlying complaint from coverage. The underlying complaint does not allege that Neumann was a "participant," was "participating," or was otherwise "practicing, instructing, supervising, officiating, [or] training" in the Jeep Tour. Rather, the complaint identifies

---

[71] *Am. Nat. Prop. & Cas. Co. v. Sorensen*, 362 P.3d 909, 913 (Utah 2013) (quoting *Fire Ins. Exch. v. Oltmanns*, 285 P.3d 802 (Utah App. 2012)).

[72] *Id*.

[73] *See Oltmanns*, 285 P.3d at 806.

[74] *Headwaters Res., Inc.*, 770 F.3d at 895.

[75] State Complaint at ¶¶11-12.

Neumann as an "innocent bystander" and an "observer".[76] Black's Law Dictionary defines

"participation" as "[t]he act of taking part in something, such as a partnership, a crime, or a

trial."[77] This definition suggests that a "participant" in the Jeep Tour would take part in the

event. Comparatively, Black's defines a bystander as "[s]omeone who is present when an event

takes place, but who does not become directly involved in it,"[78] and an observer as "[s]omeone

who sees or looks at something."[79]  Describing someone as an "observer" or "bystander" to the

Jeep Tour therefore carries implications that the person was not taking part in the event. The

allegations in the complaint that Neumann was an "observer" and a "bystander" would not

definitively exclude Neumann's claims from coverage, and therefore those allegations would still

require CSU to defend against Neumann's claims.

### CSU Cannot Use Extrinsic Evidence to Satisfy its Duty to Defend.

CSU also argues that even if the eight-corners rule initially required it to defend

Neumann's claims, that duty only continued until it ascertained facts which would remove Ms.

Neumann's claims from coverage.[80] It contends that through the process of discovery, it has

uncovered evidence that Neumann was a participant in the Jeep Tour and was injured by an

ROV.[81] Specifically, CSU points to a waiver Neumann signed prior to the Jeep Tour, statements

Neumann made in her deposition, and the Jeep Manual as evidence that Neumann was (1) a

participant in the event and (2) injured by an ROV, either of which would cause Neumann's

---

[76] State Complaint at 1, ¶9.

[77] PARTICIPATION, Black's Law Dictionary (11th ed. 2019)

[78] BYSTANDER, Black's Law Dictionary (11th ed. 2019)

[79] OBSERVER, Black's Law Dictionary (11th ed. 2019)

[80] Motion for Summary Declaratory Judgment at 16.

[81] *Id*.

claims to fall within one of the exclusions in the policy.[82] Because of this evidence, CSU contends that the duty to defend has been extinguished.[83] CSU's argument is that after an insurer uncovers extrinsic evidence through discovery that would take a plaintiff's claims outside of coverage, as CSU has done, the duty to defend is extinguished. CSU is wrong.

A court is unable to consider extrinsic evidence in determining a duty to defend unless the policy language allows it. If a policy conditions the duty to defend on the allegations in the complaint, extrinsic evidence, whether discovery prior or subsequent to a initial defense, is irrelevant to determine if a duty to defend exists.[84]

CSU points to a statement by the Utah Supreme Court in *Benjamin v. Amica Mut. Ins. Co.* that an insurer must defend "until [factual uncertainties] can be resolved against coverage"[85] to suggest CSU can use evidence adduced through discovery to resolve any factual uncertainties affecting the duty to defend. The statement[86] in *Benjamin* – a stray comment made in dictum - has been interpreted by CSU to override the eight-corners rule and allow it to resolve any factual uncertainties in this case through evidence it produced through discovery. [87] *Benjamin* itself disclaims this view, stating that the duty to defend continues "until [the

---

[82] *Id*. at 18-21.

[83] *Id*. at 21-22.

[84] *Equine Assisted Growth & Learning Ass'n.*, 266 P.3d at 736.

[85] 140 P.3d at 1215.

[86] This statement has been quoted in opinions in the District of Utah, without much analysis as to its meaning. Two of those opinions by Judge Dale Kimball, *Hamlet Homes Corp v. Mid-Continent Cas. Co*, No. 2:12CV305DAK, 2013 WL 124504 (D. Utah Jan. 9, 2013), at *4, and *Westport Ins. Corp. v. Ong*, No. 1:07CV10DAK, 2008 WL 892941, at *3 (D. Utah Mar. 28, 2008), indicated that factual uncertainties could be resolved by evidence adduced through discovery. But both those cases held the eight-corners rule did not apply to the relevant policy, and for that reason, extrinsic evidence could be considered. Therefore, neither opinion affects an eight-corners duty to defend analysis.

[87] *Equine Assisted Growth & Learning Ass'n*, a case decided subsequent to *Benjamin*, stated that when the eight-corners rule applies, "extrinsic evidence is irrelevant to . . . determine[e] . . . whether a duty to defend exists. 266 P.3d at 736 (alteration and omissions in original). Contrary to CSU's interpretation of the statement in *Benjamin*, the court in *Equine Assisted Growth & Learning Ass'n* definitively held that when the eight-corners rule applies, extrinsic evidence "plays no part in the [duty to defend] analysis." *Id*. at 736.

underlying] claims are either dismissed or otherwise resolved in a manner inconsistent with coverage." In other words, the duty to defend may be extinguished if the claims in the underlying lawsuit are judicially resolved. But discovery in the underlying case cannot be used to evaluate a duty to defend that is premised solely on allegations in a complaint. As *Benjamin* states, "When we engage in a duty-to-defend analysis, we focus on two documents: the insurance policy and the complaint."[88] If the eight-corners rule applies, the duty to defend continues until judicial resolution of the underlying claims, such as through trial or a dispositive motion in the underlying action.

*Fire Ins. Exchange v. Estate of Therkelsen*, a case decided before *Benjamin*, rejects the use of extrinsic evidence in determining a duty to defend under the eight-corners rule, even when clear extrinsic evidence is adduced though discovery in the underlying action. In *Therkelsen*, a women's ex-husband fatally shot her and wounded her paramour.[89] The paramour filed a civil claim against the ex-husband asserting various claims, including for intentional shooting and negligence. The relevant insurance policy required the insurer to defend the ex-husband on a claim of accidental shooting, but not on a claim of intentional shooting. After discovery in the underlying action, the insurer "concluded the shooting was intentional, taking it outside the homeowners policy's potential scope of coverage" and sought a judgment declaring it had no duty to defend the ex-husband. The Utah Supreme Court also concluded that the shooting, based on the undisputed facts and the evidence uncovered through discovery, "was not an 'accident' within the terms of the homeowners policy."[90] Despite this conclusion, the Utah Supreme Court ruled that the insurer could not consider the extrinsic evidence in determining the duty to defend,

---

[88] *Benjamin*, 140 P.3d at 1214.

[89] *Fire Ins. Exch. v. Est. of Therkelsen*, 27 P.3d 555, 557 (Utah 2001).

[90] *Id*. at 559.

so long as the policy premised the duty to defend on the allegations in the complaint.[91] Even though the evidence uncovered during discovery in the underlying case clearly indicated the shooting was intentional, application of the eight-corners rule would require the insurer to continue to defend the ex-husband because the complaint alleged an accidental shooting.[92]

CSU relies entirely on extrinsic evidence in claiming it has fulfilled its duty to defend. It points to Neumann's deposition, answers to interrogatories; a release she ostensibly signed; and the Jeep Manual to support its arguments that any factual questions have been resolved and the suit falls outside policy coverage.[93] As extrinsic evidence, none of these items are relevant to CSU's duty to defend. CSU's contract with Red Rock bases its duty to defend on allegations in a complaint. Discovery, through extrinsic evidence, that some of these allegations may not be factually supported does not eliminate or alter CSU's contractual duty.

To support its claim that extrinsic evidence adduced though discovery can extinguish a duty to defend, CSU cites *Owners Ins. Co. v. Dockstader*.[94] In *Dockstader*, Judge Dale A. Kimball noted that an insurer is entitled to investigate the facts surrounding a claim, and bears the burden of proving coverage does not apply by a preponderance of the evidence.[95] But unlike this case, the eight-corners rule did not apply in *Dockstader*. The policy in that case did not base the duty to defend to the allegations in the complaint.

> With respect to the duty to defend under the Policy, the Policy only provides defense coverage for covered claims. Under such a Policy, the court can examine extrinsic evidence to determine whether the claim is covered.[96]

---

[91] *Id*. at 561. The parties did not submit the policy to the trial court, so the Utah Supreme Court was unable to determine if that policy allowed consideration of extrinsic evidence.

[92] *Id*.

[93] Motion for Summary Declaratory Judgment at 16-21.

[94] 2019 WL 1206886 at *4.

[95] Id. at *3, 5.

[96] *Id*. at *4.

In those circumstances, the *Dockstader* court was permitted to consider extrinsic evidence.[97] Here, unlike *Dockstader*, the policy conditioned the duty to defend solely on the allegations in the complaint. *Dockstader* does not bolster CSU's arguments.

Furthermore, it would be inappropriate for this court to determine, on the limited record provided, factual questions such as Neumann's status as a participant where those questions may very well be an issue in the underlying case.[98] A court asked to render a declaratory judgment as to the duty to defend should not make factual findings that would affect or contradict conclusions in the underlying litigation.[99]

A comparison of the underlying complaint to the Policy requires CSU to defend Red Rock against Neumann's claims. This duty is not affected by the extrinsic evidence CSU presents here. Therefore, CSU has a duty to continue to defend Red Rock's claims.

### A Determination of CSU's Duty to Indemnify is not Ripe.

CSU also requests that a declaratory judgment be entered finding that it has no duty to indemnify Red Rock in the underlying litigation. The duty to indemnity cannot be determined until the scope of an insured's liability has been established.[100] Determination of CSU's duty to indemnify therefore will not ripen until liability in the underlying action is established.[101]

---

[97] *Equine Assisted Growth & Learning Ass'n.*, 266 P.3d at 736.

[98] Motion for Summary Declaratory Judgment at 10-12; Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 26.

[99] *See* 2 Insurance Claims and Disputes § 8:4 (6th ed.) ("The majority of the most recent cases, however, have held that a declaratory judgment should not be entered if it depends on the resolution of factual disputes that are at issue in the underlying action.")

[100] *Aspen Specialty Ins. Co. v. Utah Loc. Governments Tr.*, 954 F. Supp. 2d 1311, 1316 (D. Utah 2013).

[101] *See Owners Ins. Co. v. Presidential Club Homeowners Ass'n, Inc.*, No. 2:20-CV-0594-TC, 2021 WL 514277, at *3-4 (D. Utah Feb. 11, 2021).

Accordingly, CSU's declaratory judgment claim on this issue will be dismissed without prejudice.

### Defendant's Motion for Leave to Amend will be Denied.

Defendant moves for leave to amend its Answer and Counterclaims to add a counterclaim for abuse of process and supporting factual allegations.[102] Plaintiff argues any amendment would be futile.[103] Here, Defendant is not seeking to amend its answer, but only its counterclaims.[104] Counterclaims are a pleading "to which a responsive pleading is required," and thus may be amended once as a matter of right if a plaintiff has not filed a responsive pleading.[105] Plaintiff has not filed a responsive pleading to the counterclaims. Therefore, Defendant will be permitted to amend its counterclaims.

### CONCLUSION AND ORDER

For the forgoing reasons, CSU has a duty to defend Red Rock in the underlying lawsuit. A determination of whether CSU has a duty to indemnify Red Rock is not yet ripe.

IT IS HEREBY ORDERED that Defendant's Motion[106] is GRANTED. Judgment will be entered declaring that CSU has a duty to defend in the underlying litigation. CSU's claim for judgment declaratory on the issue of the duty to indemnify is dismissed without prejudice.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment[107] is DENIED.

---

[102] Motion for Leave to File Amended Answer and Counterclaims.

[103] Plaintiff's Opposition to Motion for Leave to Amend Counter-Claim at 2.

[104] *See* Redlined Proposed Amended Answer and Counterclaims, docket no. 35-2, at 7-11.

[105] Fed. R. Civ. P. 15(a)(1).

[106] Docket no. 13, filed August 9, 2021.

[107] Docket no. 21, filed September 6, 2021.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to Amend[108] is

GRANTED.

Dated December 21, 2021.

BY THE COURT:

David Nuffer
United States District Judge

---

[108] Docket no. 35,  filed November 3, 2021.